# IN THE CIRCUIT COURT OF LACLEDE COUNTY, MISSOURI

PHILIP H. BERGER )
221 Green Hills Lane )
Lebanon, MO 65536 )
)
     Plaintiff, )
)
    v. )
)
COPELAND COMPRESSOR CORP., )
1675 W. Campbell Road )
Sidney, OH 45365 )
    Serve Registered Agent: )
    The Corporation Company )
    120 South Central Avenue )
    Clayton, MO 63105 )
)
and )
)
NALCO CHEMICAL )
1601 W. Diehl Road )
Naperville IL, 60563-1198 )
    Serve Registered Agent: )
    C T Corporation System )
    120 South Central Avenue )
    Clayton, MO 63105 )
)
and )
)
ROHM AND HAAS COMPANY )
100 Independence Mall West )
Philadelphia, PA 19106-2399 )
    Serve Registered Agent: )
    CSC Lawyers Incorporating )
    Service Company )
    221 Bolivar )
    Jefferson City, MO 65101 )

Case No: 10LA-CC00089

FILED
MAY 0 5 2010
WANDA TYRE, CIRCUIT CLERK
LACLEDE COUNTY, MO

-1-



EXHIBIT

A

and )
)
)
**SOCONY MOBIL OIL COMPANY, INC.** )
**5959 Las Colinas Blvd.** )
**Irving, Texas 75039** )
  **Serve Registered Agent:** )
  **Prentice-Hall Corp. System** )
  **221 Bolivar Street** )
  **Jefferson City, MO 65101** )
)
and )
)
**LAURA WOOD** )
**12154 Montana Drive** )
**Conway Missouri 65632** )
)
        **Defendants.** )

## FIRST PETITION

1.     Plaintiff Philip Berger ("Phillip"), individually, for his causes of action against Defendants Copeland Compressor Corp. (Copeland), Nalco Chemical (Nalco), Rahm and Haas Company (R and H), Socony Mobil Oil Company, Inc. (Mobil), and Laura Wood (Ms. Wood) (collectively "Defendants"), states:

## NATURE OF THE CASE

2.     Philip Berger is a current employee of Copeland, which owns and operates an air compressor manufacturing plant in Lebanon, Missouri. Phillip suffers from lung impairment resulting from exposure to chemical products,

-2-

compounds, and ingredients that were designed, manufactured, processed, distributed, and sold by the Defendants who conspired to withhold information regarding the harmful health effects of their coolant and biocide products, compounds, and ingredients.

3. In his Petition, Philip Berger seeks a judgment against the Defendants for compensatory and punitive damages caused by the Defendants' intentional, reckless, and/or negligent design, testing, formulation, manufacture, marketing and selling of their defective coolant, hydraulic oil and biocide products, compounds, and ingredients.

## JURISDICTION AND VENUE

4. Plaintiff Philip Berger resides at 221 Green Hills Lane, Lebanon, Missouri 65536. Philip works at the Lebanon facility and suffers from respiratory disease related to his exposure to coolant, biocide, hydraulic oil, bacteria, fungi, mold and mycobacteria at the air compressor plant.

5. Defendant Copeland Compressor Corp. (Copeland) is a Delaware corporation whose principal place of business is 1675 W. Campbell Road, Sidney, Ohio 45365.

6. Defendant Nalco Chemical (Nalco) is a Delaware corporation whose principal place of business is 1601 W. Diehl Road, Naperville, Illinois 60563.

7. Defendant Rohm and Haas Company (R and H) is a Delaware

-3-

corporation whose principal place of business is 100 Independence Mall West, Philadelphia, Pennsylvania 19106.

8.     Defendant Socony Mobil Oil Company (Mobil) is a New York corporation whose principal place of business is 5959 Las Colinas Blvd, Irving, Texas 75039.

9.     Defendant Laura Wood (Ms. Wood) resides at .

10.    This Court has jurisdiction pursuant to §506.500.  The Defendants transacted business and/or committed tortious acts within Missouri.  Defendants designed, manufactured, processed, distributed, and sold Kathon biocide, AW-32 Hydraulic Oil and Trasar 26580 coolant products, compounds, and ingredients in Missouri.  Defendants placed the defective and harmful Kathon biocide, AW-32 Hydrolic Oil and Trasar 26580 coolant products, compounds, and ingredients into the stream of commerce, sold said products for use, transacted business and committed tortious acts in Missouri, from which Philip Berger's claim arose.

11.    Venue is proper pursuant to §508.010, because the cause of action accrued in Laclede County, Missouri.

## GENERAL ALLEGATIONS

12.    Whenever reference in this Petition is made to any act or transaction by Defendants, such allegation, unless stated otherwise, shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of such Defendants committed, knew of, performed, authorized,

-4-

ratified and/or directed such act or transaction on behalf of such Defendants while actively engaged in the scope of their duties.

13. At all pertinent times, Defendants Nalco, Mobil and/or R and H designed, manufactured, processed, marketed and/or distributed Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products. In the year 2000, Defendant Mobil merged with Exxon. In this transaction: (1) Exxon expressly or impliedly agreed to assume Defendant Mobil's liabilities and debts, (2) the transaction amounted to a merger of the corporations, and (3) Exxon Mobil is merely a continuation of Defendant Mobil.

14. At all pertinent times, Defendant Copeland, a subsidiary of Emerson Electric Company since 1986, used Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products in the design, processing, production, marketing of and/or distribution of air compressors in its Lebanon plant.

15. Defendants sold Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products for use in the Lebanon air compressor manufacturing facility, which manufactures air compressors for both national and international distribution under private label. The facility has been in operation since approximately 1992.

16. The Lebanon facility uses and has used Defendants' Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products in the metalworking fluids process to manufacture air compressors.

-5-

17. Defendants' Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products have chemical agents (antigens) and/or foster the growth of bacteria, fungi, mold and mycobacteria that causes damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

18. Defendants knew or should have known of the hazardous nature of their Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products both at the time of sale and when Philip Berger was exposed at the Lebanon air compressor manufacturing facility. Notwithstanding, Defendants failed to warn of the defective nature of their products and failed to give instructions on safe use of their products.

19. Moreover, as a result of Defendants' strong pecuniary motives in continuing and increasing the sale of Trasar 26580 coolant, AW-32 Hydraulic Oil , Kathon biocide and air compressor products, Defendants developed a plan to fraudulently conceal the true facts regarding the health consequences of the Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products and/or

-6-

their constituents from the scientific and medical communities, the government and the public, including Philip Berger.

20. Philip Berger's exposure to chemical agents (antigens), bacteria, mold, fungi and mycobateria as a result of Defendants' Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products, compounds, and ingredients directly and proximately caused his injuries, including, *inter alia*, sustained, severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. Philip Berger has suffered and continues to suffer physical pain, mental and emotional distress, and/or loss of sleep and natural rest. In addition, Philip Berger has suffered and will suffer loss of wages and/or earning capacity, and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

## COUNT I
### Strict Liability in Tort -- Design Defect
### (Philip Berger v. Nalco, R and H, and Mobil)

21. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 20 as if fully set forth herein.

22. Defendants supplied Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products within the ordinary course of their business.

-7-

23.     When Philip was exposed to Defendants' products, said products were used in a manner reasonably anticipated by Defendants.

24.     At the time of the design, manufacture, processing, distribution, sale and/or use of Defendants' products, said products were defective as designed when put to the use anticipated by Defendants, as a result, among other things, of their chemical agents (antigens) and fostering the growth of bacteria, mold, fungi, mycobacteria and other compounds having the propensity to cause damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

25.     As a result of Defendants' products' propensity to cause respiratory disease, as described above, Defendants' products were unreasonably dangerous and defective when put to the use anticipated by Defendants.

26.     As a direct and proximate result of the dangerous and defective condition of Defendants' products and Defendants' failure to warn of the dangers thereof, Philip Berger has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or

-8-

impairment of the ability to function. Philip has suffered and continues to suffer physical pain, mental and emotional distress, and/or loss of sleep and natural rest. In addition, Philip has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

27.    At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the products, Defendants knew of the dangerous condition of said products and thereby showed complete indifference and conscious disregard for the safety of others. Defendants' conduct, which caused this damage, was willful, wanton, and/or in reckless disregard for the rights of Philip and punitive and exemplary damages should be assessed against Defendants.

WHEREFORE, Philip Berger prays for judgment against Defendants Nalco, R and H, and Mobil, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

### COUNT II
### Strict Liability in Tort -- Failure to Warn
### (Philip Berger  v. Nalco, R and H, and Mobil)

28.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 27 as if fully set forth herein.

-9-

29.     Defendants designed, manufactured, processed, distributed, marketed and/or sold Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products without adequate instructions on safe use to reduce and/or eliminate exposure thereto, and/or without warnings that the products contained substances that are dangerous to health and life and cause severe respiratory diseases.

30.     As a result of Defendants' failure to adequately instruct and warn of the dangerous characteristics of the products, said products were defective and unreasonably dangerous when put to the use reasonably anticipated by Defendants.

31.     As a direct and proximate result of the dangerous and defective condition of Defendants' products and Defendants' failure to warn of the dangers thereof, Philip has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function.  Philip has suffered and continues to suffer physical pain, mental and emotional distress, and/or loss of sleep and natural rest.  In addition, Philip has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

32.     At the time of design, manufacture, processing, distribution, marketing, sale, supply and/or use of Defendants' Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products, Defendants knew of the dangerous condition of said products and thereby showed complete indifference and conscious disregard for the safety of others.  Defendants' conduct, which caused this damage, was willful, wanton, and/or in

-10-

reckless disregard for the rights of Philip Berger and punitive and exemplary damages should be assessed against Defendants.

WHEREFORE, Philip Berger prays for judgment against Nalco, R and H, and Mobil, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

**COUNT III**
**Negligence**
**(Philip Berger  v. Nalco, R and H, and Mobil)**

33.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 32 as if fully set forth herein.

34.    As designers, manufacturers, processors, distributors, marketers, sellers and suppliers of Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation:  the duty to test their products; the duty to acquire and maintain the knowledge of an expert; to design, manufacture, process, distribute, market, sell, and/or supply their products free

-11-

from defects and/or latent defects; and the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products.

35.    Defendants failed to use due care under the circumstances and were thereby negligent in the performance of their duties to Philip Berger.

36.    As a direct and proximate result of Defendants' negligence, Philip Berger has developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function.  Philip Berger has suffered and continues to suffer physical pain, mental and emotional distress, and/or loss of sleep and natural rest.  In addition, Philip Berger has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

37.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, and supplying of designed, manufactured, processed, marketed and/or distributed Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products, Defendants knew of the dangerous condition of said products and thereby showed complete indifference and conscious disregard for the safety of others.  Defendants' conduct, which caused this damage, was

-12-

willful, wanton, and/or in reckless disregard for the rights of Philip Berger and punitive and exemplary damages should be assessed against Defendants.

WHEREFORE, Philip Berger prays for judgment against Nalco, R and H, and Mobil, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

**COUNT IV**
**Negligence**
**(Philip Berger v. Copeland and Laura Wood)**

38. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 37 as if fully set forth herein.

39. As employer/supervisor of Philip Berger, Defendants had a duty to exercise due care and the ordinary, reasonable, technical skill and competence that is required of others in similar situations, including, without limitation, the duty to provide a safe work place, to provide adequate protection against any hazards in the work place, and to adequately warn of any hazards existing in the work place.

40. Defendants failed to use due care under the circumstances and was thereby negligent in the performance of their duties to Philip Berger.

41. As a direct and proximate result of Defendants' negligence, Philip Berger has developed severe, permanent, and progressive damage to the lungs,

-13-

severe damage to the respiratory system, and/or impairment of the ability to function. Philip Berger has suffered and continues to suffer physical pain, mental and emotional distress, and/or loss of sleep and natural rest. In addition, Philip Berger has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

42. At the time Defendants instructed Philip Berger to work with and around Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products without adequate warning and without adequate protection, Defendants knew or should have known of the dangerous condition of said products and thereby showed complete indifference and conscious disregard for the safety of others. Defendants' conduct, which directly and proximately caused Philip Berger's injuries, was wilful, wanton, and/or in reckless disregard for the rights of Plaintiff and punitive and exemplary damages should be assessed against Defendants.

SOMETHING MORE

43. Philip Berger alleges there was "something more" or "something extra" and "affirmatively negligent acts" by Defendants Copeland and Laura Wood that caused or contributed to Philip Berger's injuries and damages. Defendants created hazardous conditions that were not merely breaches of a duty to provide a safe place to work, but rather were breaches of a personal duty of care owed to Philip Berger. The "something

-14-

more" or "something extra" and "affirmatively negligent acts" include, but are not limited to, the following:

    a.    concealing or misrepresenting the harmful characteristics of the Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products;

    b.    concealing or misrepresenting regulations and sanctions imposed by the EPA upon Copeland for improper/inadequate exhaust and ventilation at the plant;

    c.    instructing Philip Berger to work in areas of the plant known to be environmentally unsafe, without proper exhaust/ventilation, and/or in violation of EPA regulations;

    d.    concealing or misrepresenting the frequency and/or methods of air quality testing at Copeland;

    e.    concealing or misrepresenting the results and findings of air quality testing at Copeland; and

    f.    concealing or misrepresenting the need for respiratory protection and other safety measures at the plant.

44.  The above actions and omissions by Defendants went well beyond a breach of general supervision and safety, specifically and affirmatively increasing Philip Berger's risk of injury and death, breaching a personal duty of care to Philip Berger, and affirmatively and proximately causing injury and damage to Philip Berger.

-15-

45. Defendants were involved in dangerous activity that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment, and the above actions and omissions subjected Philip Berger to a hazardous condition and caused him damage.

WHEREFORE, Philip Berger prays for judgment against Copeland and Laura Wood, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

## COUNT V
## Fraudulent Concealment
## (Philip Berger v. All Defendants)

46. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 45 as if fully set forth herein.

## ROHM AND HAAS

47. Defendant Rohm and Haas is the manufacturer of Kathon biocide, a triazine biocide, that was used in the air compressor plant in Lebanon, Missouri.

48. ILMA is and/or was, at all times relevant herein, a trade association for lubricant manufacturers that conspired with its members to fraudulently

-16-

conceal the true facts regarding the health consequences of triazine biocides from the scientific and medical communities, the government and the public, including Philip Berger. Defendant Rohm and Haas and its employees were at all relevant times members and/or officers of ILMA.

49. By 2003, Defendant Rohm and Haas was made aware that triazine biocides have a connection with mycobacteria.. In a White Paper published report by ILMA, certain species of mycobacteria, M. Chelonae and M. Immunogenum, are known to cause hypersensitivity pneumonitis and other lung diseases. Triazines, when used in metalworking fluid systems, causes a proliferation of these mycobacteria.

50. By 2003, Rohm and Haas became aware that some workers that were working around Kathon were being diagnosed with hypersensitivity pneumonitis and other lung diseases.

51. Rohm and Haas did not disclose to its customers that a) Rohm and Haas had knowledge of cases of hypersensitivity pneumonitis or any form of lung injury connected with its product, and b) Rohm and Haas was concerned that Kathon biocide used at metalworking fluid manufacturing plants may be potential causes of those lung injuries.

-17-

## COPELAND COMPRESOR CORP and LAURA WOOD.

52.     By 2003, Copeland knew that Kathon biocide caused the proliferation of M. Chelonae, M. Immunogenum and other mycobacteria which are health hazards when inhaled.

53.     By 2003, Copeland knew that the level of mycobacteria in areas where Kathon biocide was used could and should be monitored through air sampling.

54.     By 2003, Copeland knew that mycobacteria was hazardous to human lungs.

55.     By 2003, Copeland was aware that Trasar 26580 coolant used in the scroll area was leaking and produced harmful aerosol vapors.

56.     By 2003, Copeland was aware that AW-32 Hydraulic Oil used in the scroll area was leaking.

57.     By 2003, Copeland was aware that AW-32 Hydraulic Oil could reach temperatures in excess of one hundred and four degrees (104).

58.     By 2003, Copeland was aware that heated AW-32 Hydraulic Oil provided an ideal breeding ground for bacteria, mold, fungi and super mold.

59.     By 2003, Copeland knew that the scroll area, an area where Kathon biocide, Trasar 26580 coolant, and AW-32 hydraulic oil are mixed, was

-18-

contaminated with toxic chemical agents (antigens), micro bacteria, fungi, mold and mycobacteria.

60.     In 2003,Copeland put an exhaust system in the scroll area.

61.     In 2004, several Copeland employees started reporting "lung problems" to management and complained about the air quality in the scroll area.

62.  In mid-2004, the Environmental Protection Agency (EPA) sanctioned Copeland for having an exhaust system that vented too much exhaust into the air.

63.     In mid-2004, Laura Wood, a manager at Copeland, responded to the EPA sanctions by ordering the exhaust system shut down and the vents on the roof locked.

64.     The exhaust system was shut down and vents on the roof locked for approximately 6 months.

65.     The exhaust system would also be shut down and vents on the roof locked during the winter months to save money on heating bills.

66.     On at least one occasion, employees were admonished by Laura Wood for reopening the vents without authorization.

67.     When the venting system was locked shut, a greenish cloud/haze could be seen above the scroll area.

-19-

68.  No other ventilation systems or respirator devices were used during this time.

69.  Copeland and/or Laura Wood discouraged at least one worker, Michael Moore, from bringing in a surgical mask on his own initiative.

70.  In 2006, Copeland sealed off the scroll area completely from the rest of the plant by adding onto a wall previously there and thereby extending it all the way to the ceiling.

71.  By 2003, Copeland knew that persons working around Kathon biocide, Trasar 26580 coolant and AW-32 hydraulic oil that released toxic chemical agents (antigens) and fostered the growth of micro bacteria, fungi, mold and mycobacteria should wear full-face respirators.

72.  By 2003, Copeland knew that Kathon biocide, Trasar 26580 coolant and AW-32 hydraulic oil should be used within an "enclosed machine."

73.  By 2003, Copeland knew that persons working around Kathon biocide, Trasar 26580 coolant and AW-32 hydraulic oil that releases toxic chemical agents (antigens) and fosters the growth of micro bacteria, fungi, mold and mycobacteria should be in a well-ventilated area.

74.  By 2003, Copeland was aware that the chemical fumes coming from Kathon biocide, Trasar 26580 coolant and AW-32 hydraulic oil was a severe respiratory hazard that caused respiratory injuries, including: damage to the

-20-

respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

75.    By 2003, Copeland was aware that the bacteria, mold, fungi and mycobacteria coming from Kathon biocide, Trasar 26580 and AW-32 hydraulic oil was a severe respiratory hazard that caused respiratory injuries, including: damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

SOMETHING MORE

76.  Philip Berger alleges there was "something more" or "something extra" and "affirmatively negligent acts" by Defendants Copeland and Laura Wood that caused or contributed to Philip Berger's injuries and damages.  Defendants created hazardous conditions that were not merely breaches of a duty to provide a safe place to work, but

-21-

rather were breaches of a personal duty of care owed to Philip Berger. The "something more" or "something extra" and "affirmatively negligent acts" include, but are not limited to, the following:

a.   concealing or misrepresenting the harmful characteristics of the Trasar 26580 coolant, AW-32 Hydraulic Oil and Kathon biocide products;

b.   concealing or misrepresenting regulations and sanctions imposed by the EPA upon Copeland for improper/inadequate exhaust and ventilation at the plant;

c.   instructing Philip Berger to work in areas of the plant known to be environmentally unsafe, without proper exhaust/ventilation, and/or in violation of EPA regulations;

d.   concealing or misrepresenting the frequency and/or methods of air quality testing at Copeland;

e.   concealing or misrepresenting the results and findings of air quality testing at Copeland; and

f.   concealing or misrepresenting the need for respiratory protection and other safety measures at the plant.

77.   The above actions and omissions by Defendants went well beyond a breach of general supervision and safety, specifically and affirmatively increasing Philip

-22-

Berger's risk of injury and death, breaching a personal duty of care to Philip Berger, and affirmatively and proximately causing injury and damage to Philip Berger.

78. Defendants were involved in dangerous activity that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment, and the above actions and omissions subjected Philip Berger to a hazardous condition and caused him damage.

## NALCO

79. By 2003, Defendant Nalco knew, or should have known, that Trasar 26580 coolant caused adverse health effects including, but not limited to, respiratory diseases.

80. Defendant Nalco knew or should have known certain information regarding the health hazards of Trasar 26580 coolant including, but not limited to, the following:

        a.      By 2003, Nalco knew or should have known that Trasar 26580 coolant was a health hazard when inhaled;

        b.      By 2003, Nalco knew or should have known that the level of Trasar 26580 coolant used in metal working fluid machines could and should be monitored through air sampling;

        c.      By 2003, Nalco knew or should have known that Trasasr 26580 coolant was a potential respiratory exposure for persons working around metalworking fluid machines;

-23-

d.    By 2003, Nalco knew or should have known that persons working around metal working fluid machines with Trasar 26580 coolant must wear full-face respirators;

e.    By 2003, Nalco knew or should have known that Trasar 26580 coolant was a severe respiratory hazard, causing, *inter alia*: damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases; and

f.    By 2003, Nalco knew or should have known that the use of Trasar 26580 coolant should be in conjunction with an enclosed machine.

81.    Despite the fact that Nalco knew that Trasar 26580 coolant causes adverse health effects, including severe respiratory disease, Nalco intentionally and maliciously chose to conceal these facts from the scientific and medical communities, the government and the public, including Philip Berger.

**MOBIL**

82.    By 2003, Defendant Mobil knew, or should have known, that AW-32 Hydraulic oil causes adverse health effects including, but not limited to, respiratory diseases.

-24-

83.     Defendant Mobil knew, or should have known, that AW-32 Hydraulic oil provides an ideal breeding ground for bacteria, mold, fungi and super mold when heated.

84.     Defendant Mobil knew, or should have known that bacteria, mold, fungi and super mold are a serious health hazard when inhaled.

85.     Defendant Mobil knew, or should have know that bacteria, mold, fungi and super mold growing in heated AW-32 Hydraulic oil is a severe respiratory hazard, causing, *inter alia*: damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

86.     Defendant Mobil knew, or should have known that AW-32 Hydraulic oil used in conjunction with metalworking fluid machines should be monitored through air sampling machines.

87.     By 2003, Defendant Mobil knew, or should have known that persons working with AW-32 Hydraulic oil and metal working fluid machines should wear full mask respirators.

88.     By 2003, Defendant Mobil knew, or should have known that AW-32 Hydraulic oil should be used in an enclosed machine.

-25-

89.     The information concealed by Defendants regarding the serious health risks of using of AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 coolant was material.

90.     Defendants had a duty to disclose such information to Philip Berger because, *inter alia*,

        a.     Defendants possessed knowledge regarding the health effects of AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 that was superior to Philip Berger's knowledge;

        b.     Defendants had a relationship of trust and/or confidence with Philip Berger;

        c.     Defendants had a relationship based on past experience with Philip Berger;

        d.     Defendants designed, sold, and marketed AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 and falsely claimed such products were safe for use by workers like Philip Berger, which created a false sense of security; and

        e.     other attendant circumstances.

91.     Philip Berger  reasonably relied upon the fact that Defendants should fulfill their duties and did believe that Defendants would fulfill their duties as described herein.

92.     Philip Berger  reasonably and detrimentally relied on Defendants' fraudulent concealment by not acting to protect himself from the dangers associated with Defendants' AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 and was

-26-

reasonably justified in not acting and could not have discovered and/or was prevented from discovering the truth because Defendants created a false sense of security with their concealment and silence.

93. Defendants profited from their fraud by continuing and increasing the sale of AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 which they knew were hazardous to persons and deliberately kept ignorant of material facts concerning the true hazards of their products.

94. As a direct and proximate result of Defendants' concealment, Philip Berger developed hypersensitivity pneumonitis and/or respiratory disease, which caused, *inter alia*, severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. Philip Berger has suffered and continues to suffer physical pain, loss of consortium, mental and emotional distress, and/or loss of sleep and natural rest. In addition, Philip Berger has suffered and will suffer loss of wages and/or earning capacity, and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

WHEREFORE, Philip Berger prays for judgment against Defendants, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

**COUNT VI**
**Civil Conspiracy**
**(Philip Berger v. All Defendants)**

-27-

95.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 94 as if fully set forth herein.

96.     Defendants, as members of the metal working fluids industry and experts in the design, manufacture, marketing, distribution and sale of AW-32 Hydraulic oil, Kathon biocide and Trasar 26580, knew, or should have known, at all times relevant to the events described in this Petition that the above mentioned products and/or their constituents were hazardous to human health, as more fully described above. Despite this knowledge and due to Defendants' strong pecuniary motives in continuing and increasing the sale of such products, Defendants developed a plan to fraudulently conceal their knowledge of the true health effects of the AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 and/or their constituents from the scientific and medical communities, the government and the public, including Philip Berger, as more fully described below.

97.     Defendants' continuing collaboration with others in the metal working fluids industry to conceal and misrepresent the true facts regarding the health consequences of the AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 and/or their constituents constitute overt actions to defraud users and consumers of AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 , including Philip Berger.  Defendants' overt actions include, but are not limited to, the following:

    a.      The formation and continuation of an industry trade association and trade association management group, ILMA, which conspired with Defendants to conceal material information regarding the hazards

-28-

of kathon biocides and/or their constituents from the public. Specifically, by 2003, ILMA received and/or developed information that Kathon biocides and/or their constituents cause human disease, including hypersensitivity pneumonitis, from Defendants and agreed not to reveal this information to the scientific and medical communities, the government and the public, including Philip Berger; and

b.      By 2003, Defendants hired paid medical and scientific consultants to investigate the hazards to workers' exposure to AW-32 Hydraulic oil, Kathon biocide and Trasar 26580 and/or their constituents.

98.     As a direct and proximate result of the civil conspiracy of the Defendants, Philip Berger has suffered damages as set forth herein.

WHEREFORE, Philip Berger prays for judgment against Defendants, jointly and severally, in excess of the jurisdictional limit and as determined at trial, for actual and punitive damages and/or damages for aggravating circumstances, for the costs of this action and for such further relief as the Court deems fair and reasonable.

## COUNT VII
### Aggravating Circumstances - Punitive Damages
### (Philip Berger vs. All Defendants)

99.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 98 above as though fully set forth herein.

-29-

100.   Defendants committed one or more of the willful, wanton and malicious acts more fully set forth above which individually and/or cumulatively justify the submission of punitive damages in this case.

101.   Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as more fully set forth above, created a high degree of probability of severe damage to the respiratory system, hypersensitivity pneumonitis, pneumonia, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, dark rings around the eyes, high fevers, weight loss and other respiratory illnesses and diseases.

102.   The willful, wanton and malicious acts of Defendants, as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the health and safety of Philip Berger, and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Philip Berger prays for judgment against Defendants, and for punitive damages in such an amount as will serve to punish and deter the Defendants, and others similarly situated, from engaging in like conduct.

-30-

## DEMAND FOR JURY TRIAL OF ALL ISSUES

103.    Philip Berger in the above-entitled cause demands a trial by jury.


Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


KENNETH B. McCLAIN                    #32430
DANIEL A. THOMAS                       #52030
ARI N. RODOPOULOS                    #58777
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050    (816) 836-8966 FAX

ATTORNEYS FOR Plaintiff

-31-